# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 24, 2008

Charles R. Fulbruge III
Clerk

No. 08-10063
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

OSCAR JAVIER CABRERA-LOPEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:07-CR-119

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Oscar Javier Cabrera-Lopez (Cabrera) appeals his jury conviction for possession of cocaine with intent to distribute. He argues that the district court abused its discretion in allowing Special Agent Joe Paggit to testify regarding the authenticity of Cabrera's Mexican driver's license because Agent Paggit was not an expert and had no special training regarding Mexican identification documents. Cabrera also argues that the admission of Agent Paggit's testimony was not harmless as the testimony destroyed Cabrera's credibility.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Cabrera has not shown that the district court abused its discretion in admitting Agent Paggit's testimony concerning the authenticity of Cabrera's Mexican driver's license. See United States v. Gutierrez-Farias, 294 F.3d 657, 662 (5th Cir. 2002). Agent Paggit testified that he had twenty-one years of experience working as a border patrol agent in San Diego, CA and Amarillo, TX, and that he had observed thousands of Mexican driver's licenses. He testified that he was familiar with driver's licenses from Chihuahua, Mexico, both authentic and counterfeit. He testified that he thought Cabrera's Mexican driver's license was fraudulent. Agent Paggit acknowledged on cross-examination that he did not hold himself out as an expert and that he did not have any certification in document examination or special training in Mexico. He stated that he was relying on his twenty-one years of field experience.

The district court specifically instructed the jury to determine the weight to give to Agent Paggit's opinion and that it could disregard the opinion if the opinion was not based upon sufficient education and experience, the reasons given for the opinion were not sound, or the opinion was outweighed by other evidence. "[J]uries are presumed to follow their instructions." Zafiro v. United States, 506 U.S. 534, 540 (1993) (citation omitted). In view of Agent Paggit's acknowledgment that he was not an expert and that his testimony was based on his experience, and the district court's instructions to the jury, Cabrera has not shown that the district court abused its discretion in admitting this evidence. See Gutierrez-Farias, 294 F.3d at 662.

Further, any error in the admission of Agent Paggit's testimony was harmless because it did not "affect[] the outcome of the district court proceedings." United States v. Harper, 527 F.3d 396, 408 (5th Cir. 2008), cert. denied, No. 08-5037, 2008 WL 2717604 (U.S. October 6, 2008). Although Agent Paggit's testimony impugned Cabrera's credibility, the Government presented substantial circumstantial evidence that Cabrera knew that the drugs and currency were hidden in the truck. See United States v. Diaz-Carreon, 915 F.2d

951, 954-55 (5th Cir. 1990) (nervous behavior, inconsistent statements to customs officials, and a less-than-credible explanation for defendant's actions are part of overall circumstance evidence from which possession and knowledge may be inferred).

Texas State Trooper Jason Henderson stopped a 2005 white Nissan pickup truck driven by Cabrera on Interstate 40 near McLean, Texas. Cabrera appeared nervous, and his hands and voice were shaking. Based on Henderson's observation of an overwhelming odor of spray paint and Bondo, Henderson asked for and received Cabrera's permission to search the truck. Henderson found a secret compartment under the hood and asked Cabrera to follow the police car to a garage in McLean. A drug-sniffing dog alerted Henderson to the presence of drugs in the area of the suspected compartment. In the compartment, Henderson found four bundles, one of which contained 987.7 grams of 80% pure cocaine worth about $20,000. Henderson also found that the other three bundles contained $99,020.

Cabrera testified that he lives in Phoenix, Arizona, and that he purchased the truck there for $10,000 from a man named Jaime Vasquez. Vasquez borrowed the truck for a few days, drove it to Boston, MA, and left it there. Vasquez agreed to give Cabrera $700 to drive the truck back to Phoenix, AZ. Vasquez sent a man named "Jose," and another man, whose name Cabrera did not know, to drive Cabrera to Boston to get the truck. In Boston, they went to a warehouse where Jose introduced Cabrera to a man identified as "El Maestro." El Maestro gave Cabrera the $700 promised by Vasquez. Cabrera was driving the truck back to Phoenix when he was stopped by Henderson. Cabrera testified that he was nervous because he was in the United States illegally. Cabrera also testified that he did not know that drugs and cash were in the truck and that his Mexican driver's license was legitimate.

The jury could infer that Cabrera had knowledge of the hidden drugs and currency from Cabrera's nervousness and implausible explanations for his

actions.   See Diaz-Carreon, 915 F.2d at 954-55.   In view of the evidence presented at trial, Cabrera has not shown that the district court's admission of Agent Paggit's testimony concerning Cabrera's Mexican driver's license "affected the outcome of the district court proceedings."   See Harper, 527 F.3d at 408. Therefore, any error in the district court's admission of Agent Paggit's testimony was harmless.   See id.

AFFIRMED.